UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PIPELINE INDUSTRY BENEFIT FUND, | ) | |
| PIPELINE INDUSTRY PENSION FUND, | ) | |
| LOCAL 798 TRAINING CENTER FUND, | ) | |
| and PIPELINERS LOCAL 798, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 14-CV-0217-CVE-FHM |
| | ) | |
| BILL HAWK, INC., CIRRUS | ) | |
| HOLDINGS, LLC, THE ESTATE OF | ) | |
| THOMAS BOOTH, and JENINE | ) | |
| OTTOBRE-BOOTH, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Now before the Court is the Motion to Dismiss and Brief in Support of Defendants Jenine Ottobre-Booth and the Estate of Thomas Booth (Dkt. # 29). Defendants The Estate of Thomas Booth (the Estate) and Jenine Ottobre-Booth argue that they are not subject to personal jurisdiction in Oklahoma, because they are residents of Ohio and they had no contacts with Oklahoma. Plaintiffs respond that the Estate and Ottobre-Booth were responsible for making payments to a multiemployer benefits plan based in Tulsa, Oklahoma, and that these defendants could reasonably have anticipated being haled into court in Oklahoma for a dispute concerning non-payment of contributions to the benefit plans.

**I.**

Bill Hawk, Inc. (Bill Hawk) is an Ohio corporation, and plaintiffs allege that Bill Hawk "has at all material times been engaged as a contractor or subcontractor in the pipeline construction industry . . . ." Dkt. # 2, at 3. The Pipeline Industry Benefit Fund (Benefit Fund) is a multiemployer benefit fund that is subject to regulation under the Employee Retirement Income Security Act, 29

U.S.C. § 1101 et seq. (ERISA). Id. at 1. The Benefit Fund was established pursuant to a collective bargaining agreement (CBA) signed by the Pipeliners Local Union No. 798 (the Union), Bill Hawk, and other signatory employers. Id. at 1-2. The Pipeline Industry Pension Fund (Pension Fund) is a multiemployer benefit fund under ERISA, and it was also established by a CBA executed by the Union and Bill Hawk. Id. at 2. The complaint alleges that the Benefit Fund and Pension Fund are trusts created under Oklahoma law and that the Board of Trustees of the Benefit Fund and Pension Fund are fiduciaries under ERISA. Id. The Union represents employees engaged in collective bargaining, and this includes employees of Bill Hawk. Id.

Plaintiffs allege that Bill Hawk signed a CBA obligating it to file monthly remittance reports to the Union itemizing hours worked by employees covered under the CBA. Id. at 5. Bill Hawk also agreed to pay covered employees a prescribed wage stated in the CBA, and it agreed to make hourly fringe benefit contributions to the Benefit Fund and the Pension Fund. Id. The CBA contains a forum selection that provides:

> For the purpose of venue and jurisdiction, each individual Employer hereby designates and appoints the Clerk of the United States District Court for the Northern District of Oklahoma as agent for the service of process, and the Funds' Director shall promptly furnish all delinquent Employers, by certified mail, a copy of all pleadings and notice of suit. The parties to this Agreement agree that all actions arising in connection with any Employer's obligation to contribute to the aforestated Trust Funds shall be tried and litigated exclusively in the United States District Court for the Northern District of Oklahoma. This choice of venue is mandatory and not permissive. Each party waives any right or defense of forum non conveniens or similar doctrine and will not object to venue with respect to any proceeding brought in accordance with the Article XXIV. Any judgment rendered against any party in such action shall be conclusive and may be enforced in other jurisdictions in any manner provided by law.

Dkt. # 31-2, at 4.[1] Plaintiffs allege that Bill Hawk failed to submit a remittance report in February 2014 and it did not make its required contributions for February 2014. Dkt. # 2, at 5. On March 12, 2014, Bill Hawk issued a check for contributions owed as of February 9, 2014, but the check was returned due to insufficient funds. Id. The owner of Bill Hawk, Thomas Booth, died on March 13, 2014, and Booth's wife, Ottobre-Booth shut down the company. Id. at 6. Plaintiffs allege that Bill Hawk failed to make the required contributions to the Benefit Fund and the Pension Fund before it shut down. Id.

On May 8, 2014, plaintiffs filed this case alleging that Bill Hawk breached the CBA by failing to submit contributions to the Benefit Fund and the Pension Fund from January to March 2014, and they seek to recover unpaid contributions, liquidated damages, interest, and attorney fees. Id. at 6. Plaintiffs also request injunctive relief to require Bill Hawk to make timely contributions to the Benefit Fund and Pension Fund in the future. Id. at 7. Plaintiffs allege that Cirrus Holdings, LLC (Cirrus) purchased Bill Hawk in 2002 and Cirrus was owned by Booth, and plaintiffs argue that Cirrus is liable to plaintiffs under an alter ego theory. Id. at 8. Plaintiffs also allege that the Estate and Ottobre-Booth are fiduciaries under ERISA and that these defendants are individually liable for failing to make contributions to the Benefit Fund and Pension Fund. Id. at 9.

This is not the only case concerning Bill Hawk's failure to make contributions to the Benefit Fund and Pension Fund. Two cases against Bill Hawk, the Estate, and Ottobre-Booth are pending in the United States District Court for the Western District of Pennsylvania. Laborers' Combined

---

[1] Plaintiffs allege that Bill Hawk signed the CBA, but they do not allege that the Estate or Ottobre-Booth were parties to the CBA. Dkt. # 2, at 2. Plaintiffs have not provided the Court with a complete copy of the CBA and there is no evidence showing that the Estate or Ottobre-Booth actually signed the CBA.

Funds of Western Pennsylvania v. Bill Hawk, Inc. and Jenine M. Ottobre, 14-CV-521-AJS (W.D. Pa.); Operating Engineers Local 66, AFL-CIO and Construction Industry Combined Funds, Inc. v. Bill Hawk, Inc., Jenine M. Ottobre, and the Estate of Thomas G. Booth, 14-CV-522-AJS (W.D. Pa.). There is also a case against Bill Hawk pending in the United States District Court for Southern District of Ohio. Board of Trustees of The Ohio Laborers' Fringe Benefit Program v. Bill Hawk, Inc., 13-CV-500-JLG-TPK (S.D. Ohio). Claims against the Estate have also been made in the probate action in the Court of Common Pleas of Summit County, Ohio. Dkt. # 29-3.

## II.

Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over the Estate and Ottobre-Booth. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiffs' favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. Id.

4

**III.**

The Estate and Ottobre-Booth argue that they are not subject to personal jurisdiction in Oklahoma, because they have no contacts with Oklahoma and it would be unfairly burdensome to require them to defend against plaintiffs' claims in Oklahoma. Dkt. # 29. Plaintiffs respond that the CBA contains a mandatory forum selection clause and that the Estate and Ottobre-Booth waived the right to contest personal jurisdiction and venue in this Court. Dkt. # 31, at 4. They also argue that it would not be unduly burdensome for these defendants to defend against plaintiffs' claims in this Court. Id. at 6-8.

In a federal question case, a district court cannot exercise personal jurisdiction over a defendant until it determines "(1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of personal jurisdiction comports with due process.'" Peay v. BellSouth Medical Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000). ERISA provides that "[w]here an action under this subsection is brought in a district court of the United States, it may be brought in any district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The Tenth Circuit has found that this statute authorizes nationwide service of process. Peay, 205 F.3d at 1210. Some courts have applied a "national contacts" for personal jurisdiction when a statute authorizes nationwide service of process, and under this test a person is subject to jurisdiction in any United States district court if the person has sufficient minimum contacts with the United States. Med. Mut of Ohio v. deSoto, 245 F.3d 561, 567 (6th Cir. 2001); Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 825 (5th Cir. 1996); Aetna Life & Cas.

v. Owen, 2004 WL 2381744, *2 (D. Conn. Oct. 13, 2004). Even though ERISA authorizes nationwide service of process, the Tenth Circuit has rejected application of the "national contacts" test in ERISA cases and has found that the Due Process Clause of the Fifth Amendment requires "something more." Peay, 205 F.3d at 1211. The plaintiff's choice of forum must be fair and reasonable to the defendant and the district court should consider the following factors to determine if it should exercise personal jurisdiction over a defendant in an ERISA case:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

Id. at 1212. However, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." Id. If a defendant establishes that the plaintiff's chosen forum is unduly inconvenient, the plaintiff must show that the "federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." Id. at 1213. In making this determination, the Court should consider "the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between of jurisdiction in the chosen forum and plaintiff's vindication of his federal right, and concerns of judicial economy." Id. (quoting Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 948 (11th Cir. 1997)). When a statute authorizes nationwide service of process, "courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives." Id.

6

The parties assume that the Peay analysis governs defendants' motion to dismiss for lack of personal jurisdiction because plaintiff has alleged a breach of fiduciary claim against the Estate and Ottobre-Booth under ERISA. However, it is not clear to the Court that plaintiffs have actually stated a valid breach of fiduciary duty claim against these defendants. Plaintiffs allege that Ottobre-Booth was the vice president of Bill Hawk and that Thomas Booth was the president and owner of Bill Hawk. Dkt. # 2, at 4. Booth died on March 13, 2014 and plaintiffs claim that Ottobre-Booth shut down the company after Booth's death. Id. at 6. Plaintiffs further state that:

> Defendants, Thomas Booth as president and Jenine Ottobre-Booth, as vice-president and owners of Bill-Hawk, Inc. exercised authority and control over Fund assets, specifically, unpaid monthly contributions. Thomas Booth and Jenine Ottobre-Booth are liable individually as a fiduciaries [sic] of the Funds pursuant to § 3 (21)(A) of ERISA, 29 U.S.C. § 1002 (21)(A).

Id. at 9. There are no other allegations concerning any alleged actions taken by Booth or Ottobre-Booth as ERISA fiduciaries.[2] Tenth Circuit precedent is clear that an ERISA fiduciary "can 'wear two hats,' meaning an individual can be both an employer and a fiduciary" and the "'threshold question' in an action for breach of fiduciary duty is whether the alleged fiduciary 'was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" Holdeman v. Devine, 474 F.3d 770, 778 (10th Cir. 2007). A person cannot simultaneously act in two capacities for the purpose of a breach of fiduciary duty claim. Holdeman v. Devine, 572 F.3d 1190, 1193 (10th Cir. 2009). Ordinary business decisions can adversely affect an ERISA plan, but that does not mean that a person is acting as an ERISA fiduciary merely because a business decision incidentally impacts the ERISA plan. Holdemen, 474 F.3d at 778. Plaintiffs are correct that unpaid but contractually-owed benefits are an asset of an ERISA plan and that the

---

[2] Defendants do not concede that they were ERISA fiduciaries but, for the purpose of this Opinion and Order, the Court will assume that they were ERISA fiduciaries.

ERISA plan has a right to collect those assets from the employer. In re Luna, 406 F.3d 1192, 1200 (10th Cir. 2005). However, this does not convert every corporate actor with responsibility for the employer's funds into an ERISA fiduciary based only on the non-payment of contributions to an ERISA plan. Id. at 1203.

Plaintiffs state the legal conclusion that the Estate and Ottobre-Booth are ERISA fiduciaries and the Court will accept this allegation as true for the purpose of this Opinion and Order, but there are no allegations that they took any actions in their capacity as ERISA fiduciaries. The only acts alleged in the complaint that could be attributable to these defendants are the non-payment of contributions to the Benefit Fund and the Pension Fund, and Ottobre-Booth's decision to shut down the company. Dkt. # 2, at 5-6. The mere non-payment of contributions does not independently establish that a corporate actor was making a decision for the purpose of harming an ERISA plan. In re Luna, 406 F.3d at 1203. As to shutting down the company, the allegations of the complaint state that Ottobre-Booth shut down the company after Booth died, but there are no allegations that she took this action to avoid making contributions to the Benefit Fund or Pension Fund. Dkt. # 2, at 6. This allegation does not tend to support an inference that Ottobre-Booth shut down the company in her capacity as an ERISA fiduciary, and the complaint later clarifies that Bill Hawk was "indefinitely shut down due to the death of the owner . . . ." Id. at 9. The Court will consider whether these allegations as to the Estate's and Ottobre-Booth's alleged actions, rather than the actions of Bill Hawk, are sufficient for the Court to exercise personal jurisdiction over these defendants.

The Court will apply the Peay analysis in reviewing defendants' arguments that they are not subject to personal jurisdiction in this Court. Plaintiffs argue that this is unnecessary because the Estate and Ottobre-Booth are parties to the CBA and the CBA contains a mandatory forum selection

clause. Dkt. # 31, at 4. However, the complaint does not allege that the Estate or Ottobre-Booth actually signed the CBA and plaintiffs have not submitted a complete copy of the CBA. There is no dispute that Bill Hawk is bound by the forum selection clause, but that does not mean that the forum selection clause also applies to officers of Bill Hawk. Plaintiffs state that "[w]hen former President Thomas Booth and Vice President Jenine Ottobre-Booth exercised control and dominion over assets of the Trust Fund, they became a subject to personal jurisdiction under the CBA as fiduciaries with respect to assets of the Trust Funds." Dkt. # 31. The Court has assumed that the Estate and Ottobre-Booth are ERISA fiduciaries, but plaintiffs cite no legal authority for the proposition that the forum selection provision of the CBA is binding on any person who qualifies as a fiduciary under ERISA. The CBA does not expressly state that it applies to non-party ERISA fiduciaries and, instead, it states that entities designated as "Employers" are subject to the terms of the CBA. Dkt. # 31-2, at 4. There is no evidence that the Estate or Ottobre-Booth were designated as "Employers." The Court finds that forum selection clause in the CBA is not applicable to the Estate and Ottobre-Booth, and the Court will proceed to apply the Peay factors to determine if the Court has personal jurisdiction over these defendants.

The first Peay factor for the Court to consider is defendants' contacts with the forum state. Peay, 205 F.3d at 1212. The Court has reviewed the complaint and all of the allegations concerning defendants' contacts with Oklahoma reference the alleged actions of Bill Hawk, and there is no assertion that the Estate or Ottobre-Booth directed any action in their roles as ERISA fiduciaries toward Oklahoma. The only allegation concerning the role of the Estate and Ottobre-Booth is that "Defendants, Thomas Booth as president and Jenine Ottobre-Booth as vice-president and owners of Bill Hawk, Inc., exercised authority and control over Fund assets, specifically, unpaid monthly employer contributions" and that they are "liable individually as fiduciaries of the Funds . . . ." Dkt.

9

# 2, at 9. Plaintiffs have submitted the affidavit of Wade Pilgreen, the financial secretary-treasurer of the Pension Fund and Benefit Fund, and he states that Bill Hawk failed to remit contributions to the Benefit Fund beginning in February 2014. Dkt. # 31-1, at 2. He states that Ottobre-Booth shut down Bill Hawk in March 2014 and that Bill Hawk was conducting business in Pennsylvania at the time of the closing. Id. Pilgreen states that "Jenine-Ottobre declined to pay employer contributions due and owing," but he does not state that he actually spoke to Ottobre-Booth or that she took any other action than shutting down Bill Hawk. Id. at 3. It appears that the only action by the Estate and Ottobre-Booth that affected a resident of Oklahoma was the decision to shut down Bill Hawk and the resulting non-payment of contributions to the Benefit Fund and Pension Fund. This clearly affected the Benefit Fund and the Pension Fund, but plaintiffs have not alleged that the Estate or Ottobre-Booth shut down the company for the purpose of avoiding Bill Hawk's obligations to make contributions to an ERISA plan. Plaintiffs have not established that the Estate or Ottobre-Booth purposefully directed any action to a resident of Oklahoma.

The next Peay factor to consider is the inconvenience to the Estate and Ottobre-Booth in having to defend against plaintiffs' claims in Oklahoma, and the Court must take into account "(a) the nature and extent and interstate character of the defendant[s'] business, (b) the defendant[s'] access to counsel, and (c) the distance from the defendant[s] to the place where the action was brought." Peay, 205 F.3d at 1212. Bill Hawk did not conduct business in Oklahoma and the record suggests that Bill Hawk operated in Ohio and Pennsylvania. Bill Hawk's sole business dealing with Oklahoma was its contractual relationship with the Benefit Fund and Pension Fund. However, there is no evidence showing that the Estate and Ottobre-Booth could be considered engaging in interstate commerce. The Estate and Ottobre-Booth have retained Oklahoma counsel, but they are located a

substantial distance from Oklahoma. This factor does weigh in favor of defendants' argument that they are not subject to personal jurisdiction in Oklahoma.

The third Peay factor (judicial economy) does not strongly weigh in favor of either party. Plaintiffs have properly brought this action against Bill Hawk in the Court, because Bill Hawk waived its right to contest personal jurisdiction in this Court. Dismissing the claims against the Estate and Ottobre-Booth could result in the filing of a separate action against those defendants, and this would not be an efficient use of court resources. However, defendants have shown that there is other litigation concerning the same or similar subject matter pending in the Western District of Pennsylvania and the Southern District of Ohio, and claims are being made against the estate in probate court in Ohio.

The fourth Peay factor (location of discovery) favors the Estate and Ottobre-Booth. Plaintiffs allege that Bill Hawk failed to submit remittance reports and contributions to plaintiffs beginning in February 2014. Dkt. # 2, at 5. According to plaintiffs, the contributions to the Benefit Fund and Pension Fund were based on the hourly wages paid to Bill Hawk's employees. Id. The Estate and Ottobre-Booth argue that any discovery will take place outside of Oklahoma, because it will be necessary to review Bill Hawk's records kept in Ohio or where Bill Hawk's employees are located to generate the remittance reports and an accounting of any unpaid contributions. Dkt. # 29, at 6. Plaintiffs have not raised any argument as to the possible location where discovery will likely occur. The relevant discovery in this case is the business records of Bill Hawk showing the hourly wages paid to Bill Hawk's employees and the amount of contributions that were or should have been withheld from those wages, and those records will be located in Ohio or Pennsylvania where Bill Hawk actually operated.

11

Finally, the Court must consider the nature of the regulated conduct and the effect of defendants' conduct outside the borders of their state of residence. The Benefit Fund and the Pension Fund are multiemployer benefit plans that engage in interstate commerce. Bill Hawk's failure to make contributions to the Benefit Fund and the Pension undoubtedly affected plaintiffs in Oklahoma, and this conduct also affected Bill Hawk's employees located in Ohio and Pennsylvania. However, the Court has found no allegations that the Estate or Ottobre-Booth took any direct action directed toward plaintiffs and, at most, there was a business decision by Ottobre-Booth to shut down Bill Hawk following Booth's death.

Plaintiffs rely heavily on Peay and they argue that the Court should find that it has personal jurisdiction over the Estate and Ottobre-Booth for the same reasons stated by the Tenth Circuit in Peay. Dkt. # 31, at 6-7. In Peay, the Tenth Circuit identified the following factors as key in finding that the defendants were subject to personal jurisdiction in Utah:

> First, defendants have sufficient contacts with Utah: they precertified plaintiff McCluskey's treatment at a Utah hospital and paid plaintiff Goates, a Utah resident, for a portion of McCluskey's care. Because defendants rendered benefits in Utah, they knew or should have known that a dispute over benefits could arise in Utah.
>
> Second, even though defendants may be inconvenienced by defending this action in Utah, they cannot show that this burden rises to the level of a constitutional concern. Defendants are large corporations operating throughout the southeastern United States. They surely have the resources to access counsel in Utah. And, while Utah may be some distance from the southeast, modern methods of communication and transportation greatly reduce the significance of this physical burden.
>
> Third, defendants have not met their burden of demonstrating that the district court's assertion of jurisdiction will make litigation so difficult and inconvenient that they unfairly will be at a severe disadvantage compared to plaintiffs.

Peay, 205 F.3d at 1213. In this case, plaintiffs have not identified any actions that the Estate or Ottobre-Booth took in their roles as ERISA fiduciaries and they did not specifically take any action directed toward an Oklahoma resident. Plaintiffs' complaint alleges that Bill Hawk failed to remit

contributions to the Benefit Fund and Pension Fund, but plainitffs' complaint contains no allegations that the Estate or Ottobre-Booth purposefully failed to make contributions in their capacity as ERISA fiduciaries. The Estate and Ottobre-Booth are not large corporations like the defendants in Peay, but they are the estate of the deceased owner of the company and his widow. While they may be able to find counsel in Oklahoma, there is a much greater burden on these defendants than was the case in Peay. Additionally, most or all of the discovery is located in Ohio or Pennsylvania and plaintiffs have not shown that any discovery is likely to take place in Oklahoma. While Bill Hawk's failure to remit contributions impacted a multiemployer benefit plan, this does not tend to show that it would be reasonable for the Court to exercise personal jurisdiction over two alleged ERISA fiduciaries who are not alleged to have acted with any intent to harm the Benefit Fund or Pension Fund. The Court finds that defendants have met their burden to show that it would be an undue burden to require them to defend against plaintiffs' claims in this Court.

Even though the Court has found that it would be an undue burden on defendants to litigate in this forum, the Court must also consider whether "the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant[s]." Peay, 205 F.3d at 1213. In making this determination, the Court will presume that Congress intended for nationwide personal jurisdiction to further congressional objectives. Id. As to the federal policy involved, plaintiffs allege the Estate and Ottobre-Booth were ERISA fiduciaries, and the Supreme Court has explained that an ERISA fiduciary must "discharge [his] duties with respect to a plan 'solely in the interest of the participants and beneficiaries . . . .'" Pegram v. Herdrich, 530 U.S. 211, 223 (2000). In a breach of fiduciary duty case under ERISA, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether the person was acting as a fiduciary . . . ." Id. at 226. While the complaint contains

13

many allegations about Bill Hawk's acts or omissions toward the Benefit Fund and the Pension Fund, there are no allegations that the Estate or Ottobre-Booth purposefully took any action in their capacity as an ERISA fiduciary to harm an ERISA plan. The Court finds little or no connection between the actions of the Estate and Ottobre-Booth in their capacity as ERISA fiduciaries and Oklahoma. The Court recognizes that there is a presumption of nationwide personal jurisdiction in cases involving statutes that authorize nationwide service of process. However, the Estate and Ottobre-Booth have such a minimal connection to subject matter of this lawsuit that the presumption is not independently sufficient for the Court to exercise personal jurisdiction over them. The parties with the strongest interest in collecting unpaid contributions are the employees of Bill Hawk, and those employees are not located in Oklahoma. Likewise, it appears that all or the bulk of discovery will occur outside of Oklahoma, and there is little economy to the parties if plaintiffs' claims against the Estate and Ottobre-Booth were to proceed in this Court. Bill Hawk agreed to litigate claims in this forum but the Estate and Ottobre-Booth did not make such an agreement, and the Court finds that they have met their burden to show that it would be unduly burdensome to require them to defend against plaintiffs' claims in this Court.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss and Brief in Support of Defendants Jenine Ottobre-Booth and the Estate of Thomas Booth (Dkt. # 29) is **granted**, and Jenine Ottobre-Booth and the Estate of Thomas Booth are hereby terminated as parties.

**DATED** this 23rd day of October, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE